910 F.2d 784
 23 Collier Bankr.Cas.2d 999, Bankr. L. Rep. P 73,616
In the matter of LEMCO GYPSUM, INC., Debtor.
Lawrence E. MILLER, Jr., Miller Resources, Inc., Plaintiffs-Appellants
v.
KEMIRA, INC., Defendant-Appellee.
 No. 89-8581.
 United States Court of Appeals,
Eleventh Circuit.
 Sept. 6, 1990.
 
 C. James McCallar, Jr., Richard J. Harris, Savannah, Ga., for plaintiffs-appellants.
 Walter Hartridge, E. Pomeroy Williams, James L. Drake, Jr., Savannah, Ga., for defendant-appellee.
 Appeal from the United States District Court for the Southern District of Georgia.
 Before COX, Circuit Judge, HILL* and SMITH**, Senior Circuit Judges.
 EDWARD S. SMITH, Senior Circuit Judge:
 
 
 1
 Appellants purchased buildings and equipment owned by the debtor, Lemco Gypsum Inc., from the trustee in a Chapter 7 liquidation proceeding. The sale articles, which remained on appellee's land, were purchased pursuant to a sale order which required that the property be removed from the land within 60 days after purchase. The final sale order contained no reference to the sixty day removal requirement; consequently, since appellee voiced no objection, the sale became final. After appellant failed to remove the equipment, appellee filed a motion in the bankruptcy court seeking damages for the loss of use of its real property. The bankruptcy court found appellant in civil contempt and entered a judgment for damages in favor of appellee. 95 B.R. 860. The district court affirmed. We find that the bankruptcy court lacked jurisdiction to entertain appellee's motion; accordingly, the judgment of the district court is reversed with instructions to vacate the bankruptcy court's judgment.
 
 Background
 
 2
 In October 1986 Lemco Gypsum, Inc. (debtor or Lemco), a corporation engaged in gypsum recycling on property leased from Kemira, Inc. (Kemira or debtor's landlord), filed a petition for Chapter 7 bankruptcy. On July 10, 1987, the Chapter 7 trustee sought leave to publicly sell debtor's buildings, machinery, and equipment located and then remaining on Kemira's land.
 
 
 3
 On August 17, 1987 a bankruptcy judge entered an order permitting the trustee to conduct the sale of the subject property under specified conditions, including the following: "Unless other arrangements are made satisfactory to both the trustee and Kemira, ... all property shall be removed from the site within sixty (60) days following the sale."
 
 
 4
 On October 23, 1987 the sale articles were purchased by Miller Resources, Inc. (Miller Resources), a corporation organized and wholly owned by Lawrence Miller, the debtor's former president. An order entered by the bankruptcy judge on November 23, 1987 confirmed the sale subject to objection by an interested party within ten days; however, no reference was made to the sixty day removal requirement contained in the previous order of August 17. No objections were filed, so the sale became final on December 3, 1987.
 
 
 5
 In June 1988 debtor's landlord filed a motion in the bankruptcy court seeking damages for the loss of use of its real property, alleging that Miller and Miller Resources had failed to remove the sale articles as required by the August 17 order. After the issuance of a show cause order and an evidentiary hearing, debtor's landlord moved to have the sanction of civil contempt imposed upon Miller and Miller Resources as a penalty for noncompliance with the sixty day removal requirement. The court found that Lawrence Miller purchased the sale articles at a reduced price since all other bidders were forced to factor removal costs into their bids. Subsequently, according to the court, Miller knowingly and intentionally violated the sale conditions to enhance the potential profit margin on resale. In addition, as former president of Lemco, Miller was fully aware that intact buildings and equipment would bring a higher resale price than unassembled parts. Based on the above evidence and the willful character of Miller's disregard for the court's orders, the bankruptcy judge found both Miller and Miller Resources in civil contempt and awarded damages in favor of debtor's landlord. On appeal to the district court the defendants vigorously contended that the Bankruptcy Court lacked subject matter jurisdiction to enter the civil contempt order against them for the following reasons: (1) neither Miller nor Miller Resources were parties in Lemco's bankruptcy action; and (2) the articles at issue had ceased to be a part of the bankruptcy estate in December 1987 when the order of sale became final. The district court noted that the defendants intentionally refused to comply with the sixty day removal requirement in the bankruptcy court's August 17, 1987 sale order; therefore, according to the court, there had been no final disposition of the sale articles which would divest the bankruptcy court of jurisdiction over the matter. The bankruptcy court's action was classified as an exercise of its continuing power to enforce its orders and the civil contempt sanctions against Miller and Miller Resources were affirmed.
 
 
 6
 Miller and Miller Resources appeal the district court's ruling on the jurisdictional issue. We review the district court's findings of fact for clear error and its conclusions of law independently.[1]
 
 Issue
 
 7
 This appeal presents a narrow question of law: does the bankruptcy court retain jurisdiction and power to control the disposition of the debtor's property after the final sale of said property in a Chapter 7 proceeding?
 
 Discussion
 
 8
 The starting point in our jurisdictional analysis is 28 U.S.C. 1471(b), the jurisdictional provision of the Bankruptcy Reform Act of 1978.[2] Section 1471(b) conferred jurisdiction on the district court over "all civil proceedings arising under Title 11 or arising in or related to cases under Title 11." Legislative history suggests that the jurisdictional grant of Sec. 1471(b) was meant to "identify collectively a broad range of matters subject to the bankruptcy jurisdiction of the federal courts."[3] In enacting Sec. 1471(b) Congress intended to grant comprehensive jurisdiction to the bankruptcy courts to allow for efficient disposition of all matters connected with the debtor's estate.[4]
 
 
 9
 The Supreme Court's opinion in Northern Pipeline Constr. Co. v. Marathon Pipe Line Co.[5] did not disturb the jurisdiction of the district courts over proceedings related to bankruptcy.[6] Northern Pipeline instead held that Congress could not vest the whole of bankruptcy jurisdiction in bankruptcy courts because the jurisdictional grant of the 1978 Act encompassed proceedings too far removed from the "core" of traditional bankruptcy powers to allow them to be adjudicated by non-Article III judges.[7] In response to Northern Pipeline Congress enacted the Bankruptcy Amendments and Federal Judgeship Act of 1984,[8] which modified the jurisdictional grant set forth in the 1978 Act by creating two distinct categories of bankruptcy proceedings: (1) "core" proceedings, over which the bankruptcy courts may exercise full judicial power; and (2) "non-core" proceedings, over which the bankruptcy courts may exercise only limited power.[9] Because Northern Pipeline did not compel Congress to reduce the scope of bankruptcy jurisdiction, but merely altered the "placement"[10] of jurisdictional power between Article III and Article I judges, Congress apparently intended no change in the scope of jurisdiction set forth in the 1978 Act when it later enacted the jurisdictional provision of the 1984 Act, 28 U.S.C. Sec. 1334.[11]
 
 
 10
 After Northern Pipeline, jurisdiction over matters allegedly related to a bankruptcy case is best analyzed in two steps: first, the reviewing court must decide whether federal jurisdiction exists in the district court; second, if jurisdiction does exist, it must determine whether the bankruptcy court properly exercised its constitutionally available powers in proceeding over the matter as a "core" or "non-core" proceeding.[12] Thus, we first consider whether the district court had jurisdiction over the present dispute under Congress' grant of jurisdiction over proceedings "related to" a bankruptcy case.
 
 I.
 
 11
 The circuits have developed slightly different definitions of what constitutes a related case under Sec. 1471(b) and its nearly identical successor, Sec. 1334(b). However, it is well settled that the jurisdiction of the bankruptcy courts to hear cases related to bankruptcy is limited initially by statute and eventually by Article III.[13] For subject matter jurisdiction to exist there must be some nexus between the related civil proceeding and the Title 11 case. In exploring the bounds of this nexus we endeavor to seek a definition for "related to" that best represents Congress' intent to "reduce substantially the time-consuming and expensive litigation regarding a bankruptcy court's jurisdiction over a particular proceeding".[14] The interpretation of Sec. 1334(b) must also avoid the inefficiencies of piecemeal adjudication and promote judicial economy by aiding in the efficient and expeditious resolution of all matters connected to the debtor's estate.[15] This court is also concerned that an overbroad construction of Sec. 1334(b) may bring into federal court matters that should be left for state courts to decide.[16]
 
 
 12
 In Pacor, Inc. v. Higgins[17] the Third Circuit enunciated a test for determining whether a civil proceeding is sufficiently related to bankruptcy to confer federal jurisdiction on the district court. "The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. The proceeding need not necessarily be against the debtor or against the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."[18] We join the majority of the circuits that have adopted the Pacor formulation.[19]
 
 
 13
 Applying this test to the present case, it must be determined whether, at the time the motion for damages alleging loss of use was filed, the outcome of "civil action" between Miller Resources and Kemira conceivably could have affected the administration of Lemco's estate.[20] The dispute between the parties centers around the bankruptcy court's order of August 17, 1987, which contained the sixty day removal requirement. It is undisputed that Lawrence Miller was fully aware of the removal requirement when the equipment was purchased on October 23, 1987. However, the removal requirement was not included in the final order of sale entered on November 23, 1987. Debtor's landlord failed to enter an objection to the content of the order during the sale proceedings and now asserts that the removal requirement of the August 17 order should be read into the November 23 order by implication. According to debtor's landlord, the sale orders issued by the bankruptcy court were never fully complied with by appellants; therefore, the bankruptcy court could oversee the dispute between the parties because of its continuing power to enforce its orders. We agree that courts should retain jurisdiction to enforce their orders, but this does not help Kemira. The fact remains that the sale of the debtor's equipment became final on December 3, 1987, and at that time the property left its estate. When property is sold by the trustee with the approval of the court, the buyer acquires title clear of all claims in bankruptcy.[21] Such property may not be hauled back into the estate, and the terms are inviolate in the absence of fraud or collusion.[22]
 
 
 14
 The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property.[23] The broad jurisdictional provisions set forth in Sec. 1334 grant the district courts power to supervise the entire restructuring of the debtor's estate. However, once property is sold, further disputes have nothing to do with the debtor's estate. The dispute here is between debtor's landlord and Miller Resources; there is no suggestion that the proceeds, if recovered, would be turned over to the trustee. The judgment of the bankruptcy court orders Miller Resources to pay damages directly to debtor's landlord, so we fail to see how recovery could conceivably have an effect on debtor's estate.[24] This dispute does not involve the identification of the debtor's property interests and cannot affect other creditors. There is no reason for the bankruptcy court's jurisdiction to linger.[25]
 
 
 15
 As noted by the Seventh Circuit in Matter of Chicago, Rock Island & Pac. R.R. Co., the presence of a federal right or decision in the chain of title is insufficient to confer jurisdiction on a federal court.[26] Only when federal law supplies the rule of decision, or an interpretation of a federal right is an essential ingredient of a claim, does the dispute present a federal question.[27] New disputes arising after the property has been sold by the trustee to a third party must be resolved through the processes available for the resolution of such independent disputes.[28] In other words, this dispute is about rights incident to the ownership of real property, a question of state law. Such disputes should be decided by a state court; state law supplies the rule of decision for disputes concerning property transferred from bankrupts.[29]
 
 
 16
 We hold that the dispute between Miller Resources and Kemira is not "related to" the bankruptcy; its connections with the estate of debtor Lemco are simply too tenuous for jurisdiction to lie under Sec. 1334(b). Overlap between the bankrupt's affairs and another dispute is insufficient unless its resolution also affects the bankrupt's estate or the allocation of assets among creditors.[30] The mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of Sec. 1334(b). Judicial economy itself does not justify federal jurisdiction.[31] The district court had no independent basis for federal question jurisdiction over the dispute between Miller Resources and Kemira.
 
 II.
 
 17
 If the district court has no jurisdiction over a particular proceeding, then neither does the bankruptcy court.[32] The bankruptcy court lacked jurisdiction to entertain the motion for contempt against appellants; therefore, we need not determine whether the bankruptcy court properly exercised its constitutionally available powers in assessing sanctions against appellants for contempt.
 
 Conclusion
 
 18
 The bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets, but it cannot be extended beyond its purpose. That two third parties have an internecine conflict concerning the debtor's property is of no moment once all disputes concerning the creditors' stakes in the bankrupt's property have been resolved.[33] The judgment of the district court is REVERSED and the case is REMANDED with instructions to vacate the judgment of the bankruptcy court.
 
 
 
 *
 See Rule 34-2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit
 
 
 **
 Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation
 
 
 [1]
 See, e.g., Hart v. United States, 894 F.2d 1539, 1544 (11th Cir.1990); American Hardwoods, Inc. v. Deutsche Credit Corp. (In re American Hardwoods, Inc.), 885 F.2d 621, 623 (9th Cir.1989)
 
 
 [2]
 Pub.L. 95-598, 92 Stat. 2549
 
 
 [3]
 Wood v. Wood (In Re Wood), 825 F.2d 90, 93; S.Rep. No. 989, 95 Cong., 2d Sess., 153-54 (1978), reprinted in 1978 U.S.Code Cong. & Admin.News 5787, 5939-40
 
 
 [4]
 Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984); See also H.Rep. No. 598, 95th Cong., 2d Sess., 43-48, reprinted in 1978 U.S.Code Cong. & Admin.News 5963, 6004-08
 
 
 [5]
 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)
 
 
 [6]
 Fietz v. Great W. Savings (In re Fietz), 852 F.2d 455, 457 (9th Cir.1988)
 
 
 [7]
 In re Wood, 825 F.2d 90, 93 (5th Cir.1987); citing Marathon, 458 U.S. at 71, 102 S.Ct. at 2871
 
 
 [8]
 Pub.L. 98-353, 98 Stat. 333
 
 
 [9]
 In Re Wood, 825 F.2d 90, 91 (5th Cir.1987). See also Northern Pipeline Constr. Co. v. Marathon Pipe Line Co., 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982)
 
 
 [10]
 Id. 825 F.2d at 93
 
 
 [11]
 In relevant part this provision provides:
 (a) Except as provided in subsection (b) of this section, the district court shall have original and exclusive jurisdiction of all cases under Title 11.
 (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under Title 11, or arising in or related to cases under Title 11. 28 U.S.C. Sec. 1334 (1988).
 
 
 [12]
 In Re Wood, 825 F.2d at 91
 
 
 [13]
 Pacor, Inc. v. Higgins, 743 F.2d at 994
 
 
 [14]
 In re Fietz, 852 F.2d 455, 457 (9th Cir.1988); see also H.Rep. No. 595, 95 Cong., 2d Sess. 43-48, reprinted in 1978 U.S.Code Cong. & Admin.News 6004-08
 
 
 [15]
 Id
 
 
 [16]
 In Re Wood, 825 F.2d at 93. We agree with the Fifth Circuit's opinion in Wood that the abstention provisions of 28 U.S.C. Sec. 1334(c)(1) (1988) at least partially address the comity issue and obviate the need for an overly restrictive interpretation of the jurisdictional grant of Sec. 1334(b)
 
 
 [17]
 743 F.2d 984, 994 (3rd Cir.1984)
 
 
 [18]
 743 F.2d at 994
 
 
 [19]
 As noted in In re Fietz, 852 F.2d 455, 457 (9th Cir.1988), the Fourth, Fifth, Eighth and Ninth Circuits have adopted the Pacor test without modification. See In re Fietz, 852 F.2d at 457; In Re Wood, 825 F.2d 90, 93 (5th Cir.1987); Dogpatch Properties, Inc. v. Dogpatch U.S.A., Inc. (In re Dogpatch U.S.A., Inc.), 810 F.2d 782, 786 (8th Cir.1987); A.H. Robins Co., Inc. v. Piccinin (In re A.H. Robins Co., Inc.), 788 F.2d 994, 1002 n. 11 (4th Cir.) cert. denied 479 U.S. 876, 107 S.Ct. 251, 93 L.Ed.2d 177 (1986). The Second, Sixth, and Seventh Circuits have adopted a more restrictive form of the Pacor test. Their formulations may deny jurisdiction in cases where the dispute's probable effect on the debtor's estate, while conceivable, is nonetheless remote. See Turner v. Ermiger (In re Turner), 724 F.2d 338, 341 (2d Cir.1983); Kelley v. Nodine (In re Salem Mortgage Co.), 783 F.2d 626, 634 (6th Cir.1986); Elscint, Inc. v. First Wis. Fin. Corp. (In re Xonics, Inc.), 813 F.2d 127 (7th Cir.1987)
 
 
 [20]
 Subject matter jurisdiction should be determined as of the date that Kemira's filed its motion seeking damages for the loss of use of its real property, June 28, 1988. Gresham Park Community Org. v. Howell, 652 F.2d 1227, 1236 n. 25 (5th Cir. Unit B 1981)
 
 
 [21]
 In Re Chicago, Rock Island & Pac. Ry., 794 F.2d 1182, 1187 (7th Cir.1986)
 
 
 [22]
 Id. Kemira does not contend that Lawrence Miller or Miller Resources acted fraudulently in the course of the sale proceedings. Kemira failed to object to the conditions contained in the final order of sale. In order to protect the interests of good faith purchasers and the integrity of the bankruptcy system, the sale must be considered final. See In re Suchy, 786 F.2d 900, 902 (9th Cir.1985)
 
 
 [23]
 In Re Chicago, Rock Island & Pac. Ry., 794 F.2d at 1186
 
 
 [24]
 Kemira asserts that a land owner where the debtor's property has remained beyond the allotted sixty days could possibly assert a claim against the trustee for administrative expenses. After the property has been sold by the trustee and is outside the estate, Kemira's custodial efforts confer no value on the estate of debtor Lemco. See, e.g. In re United Trucking Serv., 851 F.2d 159, 161 (6th Cir.1988)
 
 
 [25]
 In Re Xonics, Inc., 813 F.2d 127, 132 (7th Cir.1987)
 
 
 [26]
 794 F.2d at 1188
 
 
 [27]
 In re Chicago, Rock Island & Pac. Ry., 794 F.2d at 1188, citing Gully v. First Nat'l Bank, 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70 (1936)
 
 
 [28]
 Id. 794 F.2d at 1186
 
 
 [29]
 Id. at 1188
 
 
 [30]
 Home Ins. Co. v. Cooper & Cooper, Ltd., 889 F.2d 746, 749 (7th Cir.1989)
 
 
 [31]
 Pacor, Inc. v. Higgins, 743 F.2d 984, 994 (3rd Cir.1984)
 
 
 [32]
 In re Fietz, 852 F.2d 455, 457 (9th Cir.1988). See also 28 U.S.C. Sec. 157 (1988)
 
 
 [33]
 In Re Xonics, 813 F.2d at 131