**In re Calvin Frank WILLIAMS, Debtor.**

**Agratrade Financing, Inc., Plaintiff,**

**v.**

**Citizens Bank of Americus, Defendant.**

**Bankruptcy No. 98–10691–JDW.**
**Adversary No. 99–1018.**

United States Bankruptcy Court,
M.D. Georgia,
Albany Division.

Aug. 25, 1999.

David A. Garland, Moore, Clarke, DuVall & Rodgers, P.C., Albany, Georgia, for AgraTrade Financing, Inc.

Ben F. Easterlin IV, Ellis, Easterlin, Peagler, Gatewood & Skipper, P.C., Americus, Georgia, for Citizens Bank of Americus.

### MEMORANDUM OPINION

JAMES D. WALKER, Jr., Bankruptcy Judge.

This matter comes before the Court on Motion to Dismiss filed by Citizens Bank of Americus ("Citizens Bank") in response to an Adversary Complaint filed against it by AgraTrade Financing, Inc. ("Agra-Trade"). Citizens Bank's motion seeks to have this Court dismiss AgraTrade's adversary under two alternative theories. First, Citizens Bank urges the Court to dismiss the case based on a finding that it lacks subject matter jurisdiction to hear it. Alternatively, if the Court finds that it does have jurisdiction, Citizens Bank urges it to voluntarily abstain from hearing the case. After considering the pleadings, evidence and applicable authorities, the Court enters the following findings of fact and conclusions of law in compliance with Federal Rule of Bankruptcy Procedure 7052.

### Findings of Fact

In 1996, Calvin Frank Williams ("Debtor") took out a loan from Citizens Bank. This loan was secured by a perfected lien on Debtor's crops planted in Macon County, Georgia. In addition, Debtor took out a loan from Gold Kist, Inc. ("Gold Kist") in the amount of $200,000.00. This loan was assigned to AgraTrade.[1] Debtor entered into a security agreement with AgraTrade giving them a perfected lien on his crops planted in Sumter County, Georgia. The security agreement contained both after-acquired property and future advances clauses. Both the Macon County and Sumter County crops were ginned by Gold Kist. Once the crops were marketed, Gold Kist sent Debtor a check made payable to both Debtor and Citizens Bank which rep-

resented the proceeds of both the Macon County and Sumter County crops. Debtor endorsed the check to Citizens Bank. The check satisfied Debtor's obligation to Citizens Bank in full. However, $174,633.76 of the proceeds received by Citizens Bank represented proceeds from Debtor's Sumter County crops which secured Debtor's debt to AgraTrade and in which Citizens Bank had no interest. As of June 1, 1998, the outstanding balance on the loan from AgraTrade was $154,745.09. AgraTrade has received no further payment toward satisfaction of that debt.

In 1997, Debtor again obtained a loan from Citizens Bank. This loan was secured by a lien on Debtor's crops planted in Sumter County. Citizens Bank filed a UCC-1 in Sumter County to perfect its interest in these crops. Debtor also obtained a loan from Gold Kist in the amount of $252,000.00. This loan was assigned to AgraTrade. Debtor entered into a security agreement with AgraTrade giving them a senior lien on his crops planted in Macon County and a junior lien on his crops planted in Sumter County. The security agreement contained both after-acquired and future advances clauses. AgraTrade filed a UCC-1 in Sumter and Macon Counties to perfect its security interest in these crops. Debtor suffered a total loss of his Macon County crops. The Sumter County crops were ginned by Gold Kist. In August 1997, Gold Kist issued to Debtor a $2,500.00 check made payable to Debtor and Citizens Bank representing proceeds from the Sumter County crops. Debtor endorsed the check to Citizens Bank. In January 1998, Gold Kist issued to Debtor a $5,358.00 check made payable to Debtor and Citizens Bank representing proceeds from the Sumter County crops. Again, Debtor endorsed the check to Citizens Bank. In March 1998, within ninety days before Debtor filed bankruptcy on April 21, 1998, Gold Kist issued to Debtor a

---

1. A dispute exists as to the relationship between Gold Kist and AgraTrade. AgraTrade asserts that Gold Kist is a separate unaffiliat-

ed corporation, whereas Citizens Bank asserts that Gold Kist is a subsidiary of AgraTrade.

$35,968.40 check made payable to Debtor and Citizens Bank representing proceeds from the Sumter County crops. As on the' previous two occasions, Debtor endorsed this check to Citizens Bank. As a result, Citizens Bank received $43,826.40 towards satisfaction of its loan to Debtor from Sumter County crop proceeds. Agra-Trade contends that Citizens Bank's UCC–1 filing was defective, thereby giving Agra-Trade the senior lien on the Sumter County crops. As of June 1, 1998, AgraTrade was owed $106,205.86 on its 1997 loan to Debtor. AgraTrade has received no further payment toward satisfaction of this loan.

On February 5, 1997, Debtor assigned to Citizens Bank an insurance policy on Sumter County crops (Pol.# MP–317028) as further security for the 1997 loan. In addition, on December 19, 1997, Debtor assigned to Gold Kist an insurance policy on Macon County crops (Pol.# MP–317027) as further security for the 1997 loan. Gold Kist's interest in the insurance policy was later assigned to AgraTrade. Debtor made claims against these policies in 1998. AgraTrade contends that the insurer erred in distributing the proceeds of these policies and, as a result, Citizens Bank received $10,309.00 that was supposed to be paid to AgraTrade. Debtor's estate has yet to abandon its interest in the proceeds of these insurance policies.

In its complaint, AgraTrade contends that Citizens Bank converted the proceeds from the Sumter County crops in both 1996 and 1997, and $10,309.00 of the proceeds from its 1997 Macon County insurance policy. As of June 1, 1998, Agra-Trade had an unsecured claim in Debtor's case totaling $261,000.00. AgraTrade claims it is entitled to recover $228,769.16 allegedly converted by Citizens Bank. As of yet, this is a no-asset Chapter 7 case. Neither the Debtor nor the trustee of his estate are parties to this adversary. However, the trustee has filed separate adversary proceedings against both Citizens

Bank and AgraTrade seeking to recover, as a preference, the $35,968.40 payment made from the proceeds of Debtor's Sumter County crops within ninety days before Debtor filed bankruptcy. The trustee hopes to recover this amount from whichever party is in possession of the funds as a result of this adversary.

Citizens Bank argues in its motion to dismiss that the bankruptcy court lacks subject matter jurisdiction to hear this dispute. Citizens Bank points out that neither the Debtor nor Trustee are litigants in this proceeding, and further, that any resolution to this matter will have no effect on Debtor's bankruptcy estate. In the alternative, Citizens Bank argues that even if the Court decides it does have jurisdiction to hear this dispute, it should exercise its discretion and abstain from hearing the matter. On the other hand, AgraTrade argues that because the 1997 insurance proceeds are still estate property and the Trustee is asserting a claim to a portion of the 1997 Sumter County crop proceeds and these transactions are cross-collateralized, the resolution of this dispute will at least conceivably have an effect on Debtor's bankruptcy estate, thus conferring subject matter jurisdiction on the bankruptcy court. Further, AgraTrade argues against abstention. For the following reasons, the Court finds that though it does have jurisdiction to hear this dispute, it will abstain.

*Conclusions of Law*

### I. Jurisdiction

 The conversion claim that Agra-Trade has asserted against Citizens Bank is purely a Georgia state law question. As such, this adversary is at best "related to" Debtor's bankruptcy case. *See Continental Nat'l Bank v. Sanchez (In re Toledo),* 170 F.3d 1340, 1343–44 (11th Cir.1999). The Eleventh Circuit has recently reiterated that the "related to" jurisdictional grant of 28 U.S.C. § 1334 [2] is "extremely broad."

---

2. 28 U.S.C. § 1334 provides that the district

courts shall have exclusive jurisdiction over

*Toledo,* 170 F.3d at 1345. In *Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.),* 910 F.2d 784, 788 (11th Cir.1990), the Eleventh Circuit explicitly adopted the "liberal test from *Pacor, Inc. v. Higgins,* 743 F.2d 984 (3d Cir.1984), for determining [related to] jurisdiction over an adversary proceeding." *Toledo,* 170 F.3d at 1345. As the Third Circuit stated in *Pacor:*

> The usual articulation of the test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy. Thus, the proceeding need not necessarily be against the debtor or the debtor's property. An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate.

743 F.2d at 994 (citations omitted), *quoted in Toledo,* 170 F.3d at 1345. From this test, the Eleventh Circuit has keyed in on the word, "conceivable," as supporting the finding that the jurisdictional grant is extremely broad. In *Toledo,* 170 F.3d at 1345, the court cited with approval *In re Marcus Hook Dev. Park, Inc.,* in which the Third Circuit clarified that "conceivable effect" does not require a certain or even likely effect on the bankruptcy estate, but rather merely the *"possible* impact on 'the debtor's rights, liabilities, options, or freedom of action' or the 'handling and administration of the bankrupt estate,'" 943 F.2d 261, 264 (1991) (emphasis added).

Given this expansive view of the bankruptcy court's "related to" jurisdiction, this Court finds that such jurisdiction exists in this case. The possibility exists, as tenuous as it may be, that the dispute between AgraTrade and Citizen's Bank could affect

the trustee's right to recover the $35,-968.40 payment made within ninety days of Debtor's bankruptcy, and the dispute regarding the insurance proceeds is a dispute involving property of the estate, though the trustee has asserted no claim to that property. However, despite finding that jurisdiction exists, the Court will exercise its discretion and abstain from hearing this matter.

## II. Abstention

■ Even where jurisdiction to hear a case exists, a bankruptcy court may, and sometimes must, abstain from hearing certain matters under the principles of mandatory and permissive abstention. The rule regarding mandatory abstention requires the court to abstain from hearing "related to" matters in which an action has been commenced in, and can timely be adjudicated in, state court. 28 U.S.C. § 1334(c)(2). As no action has yet been commenced in state court, this Court is not required to abstain. *See Walker v. Bryans (In re Walker),* 224 B.R. 239, 240–41 (Bankr.M.D.Ga.1998) (Walker, J.). However, the Court is permitted to abstain from any proceeding, core or non-core, "in the interests of justice, or in the interest of comity with State courts or respect for State law." 28 U.S.C. § 1334(c)(1). This Court has previously delineated twelve factors which courts use to decide whether to abstain from hearing a particular matter in accordance with 28 U.S.C. § 1334(c)(1). *Walker,* 224 B.R. at 242. These factors consist of the following:

> (1) the effect or lack thereof on the efficient administration of the estate if a Court recommends abstention;
>
> (2) the extent to which state law issues predominate over bankruptcy issues;
>
> (3) the difficulty or unsettled nature of the applicable state law;

all cases under title 11, and original but not exclusive jurisdiction over all proceedings "arising under" title 11, or "arising in" or "related to" cases under title 11. 28 U.S.C. § 157(a) gives the district court the authority to refer all such cases to the bankruptcy court of its district. The District Court for the Middle District of Georgia did so by order entered on July 13, 1984.

(4) the presence of a related proceeding commenced in state court or other non-bankruptcy court;

(5) the jurisdictional basis, if any, other than 28 U.S.C. § 1334;

(6) the degree of relatedness or remoteness of the proceeding to the main bankruptcy case;

(7) the substance rather than form of an asserted "core" proceeding;

(8) the feasibility of severing state law claims from core bankruptcy matters to allow judgments to be entered in state court with enforcement left to the bankruptcy court;

(9) the burden on the bankruptcy court's docket;

(10) the likelihood that the commencement of the proceeding in bankruptcy court involves forum shopping by one of the parties;

(11) the existence of a right to a jury trial; and

(12) the presence in the proceeding of nondebtor parties.

*Id.* (citing *Foster v. Farmers and Merchants Bank (In re Foster)*, 105 B.R. 746, 749–50 (Bankr.M.D.Ga.1989)). Taking all of these factors into consideration, the Court holds that permissive abstention is appropriate in this case.

As previously stated, this dispute will be decided purely by state law; section 1334 provides the only jurisdictional basis for this action; the Court finds this case is only remotely related to Debtor's main bankruptcy case; the entire action can be heard in state court without having to sever it from any federal claims; filing the complaint in this court seems an attempt by AgraTrade to avoid having to litigate in state court; and this proceeding involves only nondebtor parties. For these reasons, the Court will voluntarily abstain from hearing this matter. AgraTrade is free to pursue its claims against Citizens Bank in state court.