[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 20-13504
Non-Argument Calendar

_____

D.C. Docket No. 3:19-cv-01395-TJC
Bkcy No. 3:15-bk-1645-JAF, 3:18-AP-43-JAF


In re: JAMES K. LINDSEY,

                                                              Debtor.

_____

JAMES K. LINDSEY,
KRACOR SOUTH, INC.,
a Florida corporation,

                                                    Plaintiffs-Appellants,


versus


DUCKWORTH DEVELOPMENT II, LLC,

                                                    Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Florida

_____

(March 25, 2021)

Before MARTIN, GRANT, and LUCK, Circuit Judges.

PER CURIAM:

James Lindsey and Kracor South, Inc., appeal the district court's order affirming the bankruptcy court's final judgment for Duckworth Development II, LLC, on its claims to quiet title on two parcels of real estate it bought from Lindsey and Kracor, and to reform the warranty deed on those parcels. We also affirm.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In 2015, Lindsey filed a voluntary petition for Chapter 13 bankruptcy relief. In his schedule of assets, Lindsey listed a "fee simple" interest in two parcels of real property with a collective fair market value of $487,410. This real property consisted of a commercial multi-tenant building and an adjacent vacant lot. The commercial building was subject to a mortgage held by Ameris Bank and Lindsey owed overdue taxes on both parcels.

On February 16, 2017, Ameris Bank filed an action in state court to foreclose its mortgage on the commercial building. The action named as defendants Lindsey and Kracor, a Florida corporation in which Lindsey was the president and majority shareholder.

While the state foreclosure case was pending, Lindsey spoke to Mary Lundy, a realtor, about selling the parcels. Lindsey told Lundy that he needed to sell the parcels "quickly" or else he would lose them to the bank. Lindsey was therefore

2

looking for a "fire sale" to unload the parcels "very quickly" before "the lenders took [them] back." Lundy referred Lindsey to Eric Bumgarner, a realtor specializing in commercial real estate. Bumgarner introduced Lindsey to Hank Duckworth, the owner of Duckworth Development, as a potential buyer. On April 4, 2017, Lindsey sent the following email to Bumgarner: "I met with Hank and his attorney yesterday. All looks good for the purchase of both parcels, net to me $475,000. I need to get a contract asap where I can forward that to Ameris Bank which will postpone the foreclosure suit."

Bumgarner drafted a commercial contract for the sale of the parcels to Duckworth Development. The parties to the agreement were Duckworth Development (the buyer) and "Kracor South, Inc. et al, a Florida Corporation" (the seller). The purchase price was $450,000. The contract provided that the "[s]eller has the legal capacity to and will convey marketable title to the [p]roperty by statutory warranty deed . . . free of liens, easements and encumbrances of record or known to [s]eller[.]" In the signature line for the seller, Lindsey printed his name followed by "Kracor-South." Below that, Lindsey listed his title as "Pres. James K. Lindsey." The contract was signed on April 6, 2017.

On April 24, 2017, Duckworth Development's attorney sent Lindsey a title commitment and cover letter. The letter identified "Kracor South, Inc. and James K. Lindsey" as, collectively, the seller. The letter provided that the seller had to

3

satisfy the requirements of the title commitment before closing, which included both Kracor and Lindsey executing a warranty deed as a condition to the issuance of a title insurance policy. The title commitment also provided that Duckworth Development was required to obtain a mortgage on the parcels before closing.

On June 27, 2017, Lindsey filed with the bankruptcy court a motion to sell real property. Lindsey, through counsel, represented that he had "entered into a sales agreement to sell" "his" properties to Duckworth Development for $450,000 (the commercial building and vacant lot described above). Lindsey sought the bankruptcy court's permission to sell the parcels according to the terms of the contract "between [him]" and Duckworth Development. This sale would satisfy, Lindsey represented, the mortgage and tax liens on the parcels. The sale would also result in $32,511.12 net proceeds "payable to [Lindsey]." Lindsey represented that he was "not aware of any other claimed interest" in the property. The motion at no point mentioned Kracor. On July 25, 2017, the bankruptcy court granted Lindsey's motion and authorized him to sell the parcels according to the contract's terms. The bankruptcy court ordered that the net proceeds from the sale had to be sent to Lindsey's Chapter 13 trustee.

The closing occurred on July 7, 2017, and a warranty deed was executed between Kracor and Duckworth Development. Lindsey signed the warranty deed as president of Kracor, transferring Kracor's interest to Duckworth Development, but

4

he didn't sign it in his individual capacity.  Lindsey also signed a title affidavit, swearing that Kracor owned the parcels and there were "no parties in possession of the [p]roperty other than [Kracor]."  Following the sale, the mortgage and tax liens on the parcels were satisfied and Kracor received a check for $138,043.62.  A new mortgage held by Synovus Bank in Duckworth Development's name was placed on the parcels.

After the sale, Lindsey didn't communicate with Hank Duckworth for six months.  Duckworth Development spent about $500,000 improving the parcels and leased portions of the commercial building to tenants.  Lindsey didn't contribute to these improvements.

On January 23, 2018, a title insurance agency prepared a report stating that the owners of the parcels were Duckworth Development and Lindsey.  That same day, Lindsey called Hank Duckworth to inform him that his attorney had "screwed up" and Duckworth Development could get the new mortgage on the parcels paid off if Duckworth "played his cards right."  Then, on February 7, 2018, Lindsey emailed Hank Duckworth stating that Lindsey was the "50% owner" of the parcels. Lindsey wrote that he didn't approve any of the ongoing improvements at the property, and requested a halt to construction "until an agreement between [him] and Duckworth [was] finalized in writing[.]"  He also wrote that he didn't authorize the

new mortgage and would seek to amend it to exclude his half interest. Finally, Lindsey demanded half of all rental income generated by the parcels.

In response to Lindsey's email, Duckworth's attorney prepared a corrective warranty deed reflecting that both Kracor and Lindsey were the grantors of the parcels. Duckworth's attorneys sent the proposed corrective warranty deed to Lindsey's attorney, stating that: (1) Lindsey didn't have a half interest in the property; and (2) it was a "mistake" to not have him individually execute the warranty deed. Lindsey refused to sign the corrective warranty deed (against the advice of his attorney).

On April 11, 2018, Duckworth Development brought an adversary proceeding against Lindsey and Kracor in Lindsey's ongoing Chapter 13 bankruptcy case. Count one of Duckworth Development's complaint sought reformation of the warranty deed and count two sought to quiet title. Duckworth Development alleged that the warranty deed mistakenly did not reflect the parties' agreement that Lindsey would sell his entire interest in the parcels.

Although Lindsey's Chapter 13 bankruptcy case had been pending for three years, on April 16, 2018—five days after Duckworth Development initiated the adversary proceeding—Lindsey requested that his bankruptcy case be dismissed. The bankruptcy court dismissed the case the next day.

6

On April 23, 2018, Duckworth Development moved the bankruptcy court to retain jurisdiction over the pending adversary proceeding. Lindsey objected to the retention of jurisdiction. He conceded that "the bankruptcy court ha[d] discretionary power to retain jurisdiction over an adversary complaint following dismissal of the underlying bankruptcy case" if cause is shown. Lindsey argued that the bankruptcy court shouldn't retain jurisdiction here because a dismissal of the adversary proceeding wouldn't prejudice or inconvenience the parties.

The bankruptcy court granted Duckworth Development's motion and retained jurisdiction. The bankruptcy court concluded that dismissal of the adversary proceeding was inappropriate because: (1) judicial economy would be best served by retaining jurisdiction; (2) the bankruptcy court's knowledge of the case would promote fairness and convenience to the parties; and (3) the legal issues were straightforward and best addressed by the bankruptcy court.

The bankruptcy court held a two-day bench trial on Duckworth's complaint, and then entered its findings of fact and conclusions of law. As to the reformation claim, the bankruptcy court found that the parties had intended for Duckworth Development to purchase the parcels in fee simple, and the warranty deed didn't reflect this agreement. The bankruptcy court found that the omission of Lindsey in his individual capacity from the warranty deed was a mistake caused by Duckworth Development's attorneys, and this mistake wasn't gross negligence. Reformation of

7

the warranty deed, the bankruptcy court concluded, was therefore the appropriate remedy. As to the claim to quiet title, the bankruptcy court concluded that Duckworth established it held valid title to the parcels and Lindsey's claimed half interest was invalid. Thus, the bankruptcy court entered final judgment in Duckworth's favor.

Lindsey moved for rehearing, arguing that: (1) the bankruptcy court lacked subject matter jurisdiction over the adversary proceeding; (2) Duckworth Development lacked standing to bring the adversary proceeding after Lindsey's bankruptcy case was dismissed; (3) Lindsey hadn't consented to the bankruptcy court entering final judgment, which was necessary because the adversary proceeding was a non-core proceeding; (4) Duckworth Development had failed to prove there was a mutual mistake in the warranty deed that justified reformation; and (5) the bankruptcy court erred by finding that Duckworth's attorneys weren't grossly negligent in drafting the warranty deed.

The bankruptcy court denied the motion. The bankruptcy court concluded it had subject matter jurisdiction over the adversary proceeding under 28 U.S.C. 1334(b) because it was "related to" Lindsey's Chapter 13 bankruptcy case and estate. The bankruptcy court then concluded that the dismissal of Lindsey's bankruptcy case didn't divest it of jurisdiction because "related to" jurisdiction existed at the time the adversary complaint was filed. And Duckworth Development

had standing, the bankruptcy court concluded, because it had suffered a concrete injury that could be redressed following the retention of jurisdiction. Finally, the bankruptcy court found that Lindsey had consented to the entry of final judgment—even though the adversary complaint was a non-core proceeding—under a local rule providing that a party is deemed to consent to the bankruptcy court entering judgment if the party didn't timely file a motion addressing the bankruptcy court's jurisdiction.[1]

Lindsey and Kracor appealed the bankruptcy court's judgment to the district court. The district court affirmed, concluding that the bankruptcy court didn't abuse its discretion in retaining jurisdiction and "committed no errors of law and made no clearly erroneous factual findings." Lindsey and Kracor timely sought our review of the bankruptcy court's judgment.

## STANDARDS OF REVIEW

"As the second court to review the bankruptcy court's judgment, we examine the bankruptcy court's order independently of the district court." Westgate Vacation Villas, Ltd. v. Tabas (In re Int. Pharmacy & Discount II, Inc.), 443 F.3d 767, 770 (11th Cir. 2005). We review a bankruptcy court's retention of jurisdiction over an adversary proceeding for an abuse of discretion. Fidelity & Deposit Co. of Md. v.

---

[1] The bankruptcy court rejected Lindsey's challenges to its factual findings because Lindsey didn't allege a change in the law or present any newly discovered evidence.

9

Morris (In re Morris), 950 F.2d 1531, 1535–36 (11th Cir. 1992). "[W]e review determinations of law made by either the district or bankruptcy court de novo, while reviewing the bankruptcy court's findings of fact for clear error." Westgate Vacation, 443 F.3d at 770. "[F]indings of fact are not clearly erroneous unless, in light of all the evidence, we are left with the definite and firm conviction that a mistake has been made." Id.

## DISCUSSION

Lindsey argues that the bankruptcy court: (1) lacked jurisdiction over the adversary proceeding; (2) erred in reforming the warranty deed without sufficient proof of a mutual mistake; and (3) erred in finding that Duckworth's attorneys didn't act with gross negligence.

### *Jurisdiction*

Lindsey argues that the bankruptcy court had no jurisdiction over the adversary proceeding for four reasons. First, Lindsey argues that the bankruptcy court didn't have subject matter jurisdiction under 28 U.S.C. section 1334(b) because the outcome of the adversary proceeding couldn't have impacted his estate. Second, Lindsey argues that the bankruptcy court erred by retaining jurisdiction over the adversary proceeding after it had dismissed his bankruptcy case. The "general rule," Lindsey maintains, is that related proceedings should be dismissed when the underlying bankruptcy case is terminated. Third, Lindsey argues that he didn't

10

consent to the bankruptcy court adjudicating the adversary claims, which precluded it from entering final judgment because the adversary proceeding was non-core to Lindsey's bankruptcy case.     And fourth, Lindsey argues that Duckworth Development lacked standing because the bankruptcy court was without jurisdiction.

## Subject Matter Jurisdiction

"A proceeding is within the bankruptcy jurisdiction, defined by 28 U.S.C. [section] 1334(b), if it 'arises under' the Bankruptcy Code or 'arises in' or is 'related to' a case under the Code." Carter v. Rodgers, 220 F.3d 1249, 1253 (11th Cir. 2000). The test for determining whether a proceeding is "related to" a bankruptcy case "is whether the outcome of the proceeding could conceivably have an effect on the estate being administered in bankruptcy." Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784, 788 (11th Cir. 1990) (quotation omitted). "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate." Id. (quotation omitted). We look to whether subject matter jurisdiction existed "as of the date" of the filing of Duckworth Development's adversary complaint. See id. at 788 n.20 ("Subject matter jurisdiction should be determined as of the date that Kemira's filed its motion seeking damages for the loss of use of its real property . . . .").

We conclude that Duckworth Development's adversary complaint was "related to" Lindsey's bankruptcy case. "While [Duckworth's] action against [Lindsey and Kracor] arose after the date of the bankruptcy petition, [its] suit turn[ed] solely on allegations of wrongdoing in the sale of property belonging to the bankruptcy estate." See Carter, 220 F.3d at 1253. A recovery in Duckworth Development's favor would invalidate Lindsey's claimed half interest in real estate worth $450,000—which is what ended up happening. As such, the outcome of the adversary proceeding could "impact [Lindsey's] bankruptcy estate," see id. at 1254, and could alter his "rights, liabilities, options, or freedom of action," Miller, 910 F.2d at 788. The bankruptcy court therefore had subject matter jurisdiction. See id. at 787–88.

## Retention of Jurisdiction

The "dismissal of an underlying bankruptcy case does not automatically strip a federal court of jurisdiction over an adversary proceeding which was related to the bankruptcy case at the time of its commencement." Fidelity & Deposit, 950 F.2d at 1534. "Although dismissal of the bankruptcy case usually results in dismissal of all remaining adversary proceedings, 11 U.S.C. [section] 349 gives the bankruptcy court the power to alter the normal effects of the dismissal of a bankruptcy case if cause is shown." Id. at 1535. A bankruptcy court considers three factors in determining whether to retain jurisdiction over an adversary proceeding: "(1)

12

judicial economy; (2) fairness and convenience to the litigants; and (3) the degree of difficulty of the related legal issues involved." Id. The decision on whether to retain jurisdiction over a pending adversary proceeding is "left to the sound discretion of the bankruptcy court." Id. at 1534.

Here, the bankruptcy court considered the three applicable factors and concluded that they each weighed in favor of retaining jurisdiction. Lindsey doesn't challenge the bankruptcy court's findings on any of these three factors. He instead argues that once a bankruptcy case is dismissed, "there is nothing to proceed with and anything that occurred after the dismissal is void"—including the retention of jurisdiction. Because the proceedings after the dismissal were void, Lindsey argues, the bankruptcy court lacked jurisdiction.

We disagree. Fidelity & Deposit rejected the argument that a bankruptcy court's dismissal of a bankruptcy case without first "expressly retaining jurisdiction over the unresolved adversary proceeding terminate[s] the entire matter." 950 F.2d at 1534. Because "an adversary proceeding in the bankruptcy court and the companion bankruptcy case are two distinct proceedings," we explained, "express retention over the adversary proceeding upon disposition of the related bankruptcy case is unnecessary." Id. Thus, the fact that the bankruptcy court retained jurisdiction over the adversary proceeding only after it dismissed the bankruptcy case didn't divest it of jurisdiction. See id.

13

Consent to Entry of Final Judgment in a Non-Core Proceeding

Lindsey finally argues that he didn't consent to the bankruptcy court entering final judgment in the adversary proceeding, which couldn't happen without his consent because it was "non-core" to the bankruptcy case. Again, we disagree. In a non-core proceeding, the parties may consent to have a bankruptcy court "enter appropriate orders and judgments." 28 U.S.C. § 157(c)(2). But "[n]othing in the Constitution requires that consent to adjudication by a bankruptcy court be express." Wellness Int'l Network, Ltd. v. Sharif, 135 S. Ct. 1932, 1947 (2015). Rather, the "implied consent standard articulated in [Roell v. Withrow, 538 U.S. 580, 590 (2003)] supplies the appropriate rule for adjudications by bankruptcy courts under [section] 157." Id. at 1948. Under this standard, designed to "increas[e] judicial efficiency and check[ ] gamesmanship," the "key inquiry is whether the litigant or counsel was made aware of the need for consent and the right to refuse it, and still voluntarily appeared to try the case before the non-Article III adjudicator." Id. (quotation omitted and emphasis added).

The bankruptcy court found that Lindsey consented to the entry of final judgment. It did so based on Bankruptcy Local Rule 7001-1(k)(6), which provides that:

> A party who seeks a determination that the Bankruptcy Court does not have jurisdiction to enter final orders or judgments on any issue raised in the adversary proceeding shall file a motion for such determination no later than the date set for filing a response to the complaint. A party

who fails to timely file such a motion is deemed to have consented to the Bankruptcy Court's entry of final orders and judgments in the proceeding.

When Lindsey—through counsel—answered the complaint, he didn't file a motion for the bankruptcy court to determine its jurisdiction to enter final judgment as required by rule 7001-1(k)(6).

Lindsey's affirmative representations in his pleadings support the district court's consent finding.  Duckworth Development alleged in its complaint that its adversary proceeding was a core proceeding, and Lindsey admitted to this allegation in his answer.  See Beitel v. OCA, Inc. (In re OCA, Inc.), 551 F.3d 359, 368 (5th Cir. 2008) (finding consent where defendant "filed an answer admitting to the complaint's allegation that" the matter was a core proceeding); Brook v. Ford Motor Credit Co., LLC (In re Peacock), 455 B.R. 810, 812–13 (Bankr. M.D. Fla. 2011) (concluding that the defendant's admission in its answer that a non-core proceeding was a core proceeding was consent); Hiser v. Neumann Med. Ctr., Inc. (In re St. Mary Hospital), 117 B.R. 125, 131 (Bankr. E. D. Pa. 1990) ("An admission that a proceeding is core accords irrevocable consent to a bankruptcy court to determine the proceeding, even if it is non-core.").

Moreover, prior to the bench trial, Lindsey moved the bankruptcy court to enter judgment on the pleadings in his favor.  After Duckworth Development presented its case but before Lindsey made his, Lindsey moved for a directed verdict

15

and again requested that the bankruptcy court enter judgment in his favor. And after the bench trial had ended, Lindsey filed a second motion for directed verdict and filed a post-trial closing argument seeking judgment in his favor. Having consistently sought the bankruptcy court's judgment, Lindsey can't protest now that judgment was in fact entered. See In re Tribune Media Co., 902 F.3d 384, 396 (3d Cir. 2018) (finding consent where the defendant "made clear that he sought a final judgment on the merits"); True Traditions, LC v. Wu, 552 B.R. 826, 838 (N.D. Cal. 2015) ("When it came time for summary judgment . . . , [a]ppellant sought final judgment in its favor without ever mentioning consent . . . . Courts confronted with this situation have time and again concluded that the movant had impliedly consented to the bankruptcy court's authority to enter final judgment." (citations omitted)).

Finally, after failing to comply with rule 7001-1(k)(6) and repeatedly moving for judgment, Lindsey waited seventeen months until his counsel raised the issue of consent—and only after a five-hour bench trial and after the bankruptcy court issued its findings of fact and conclusions of law in Duckworth Development's favor. On this record, the bankruptcy court didn't err by finding that Lindsey consented to its entry of final judgment. See Hasse v. Rainsdon (In Re Pringle), 495 B.R. 447, 457–62 (B.A.P. 9th Cir. 2013) (finding implied consent where the defendant "answer[ed] the complaint, participat[ed] in discovery, contest[ed] issues at trial," and her

16

representation by counsel allowed the inference "that she was aware of her right to refuse consent and demand an Article III forum").

In sum, we conclude that the bankruptcy court had subject matter jurisdiction, didn't abuse its discretion in retaining jurisdiction over the adversary proceeding, and didn't clearly err by finding that Lindsey consented to its entry of final judgment. And because the bankruptcy court had jurisdiction and could redress the claimed injuries, Duckworth Development had standing. See Spokeo, Inc. v. Robins, 136 S. Ct. 1540, 1567 (2016) (standing requires that the "plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision.").

*Reformation*

Lindsey argues there was insufficient evidence to support Duckworth Development's reformation claim because there was "no evidence" that the parties intended for him to sell his entire fee simple interest in the parcels. According to Lindsey, there was also "no clear and convincing evidence" of a mutual mistake in the warranty deed. The record tells a different story.

A "court of equity has the power to reform a written instrument where, due to a mutual mistake, the instrument as drawn does not accurately express the true intention or agreement of the parties to the instrument." Tobin v. Mich. Mut. Ins. Co., 948 So. 2d 692, 696 (Fla. 2006) (quotation omitted). "A mistake is mutual

17

when the parties agree to one thing and then, due to either a scrivener's error or inadvertence, express something different in the written instrument." Providence Square Ass'n, Inc. v. Biancardi, 507 So. 2d 1366, 1372 (Fla. 1987).

### The Parties' Intent

The bankruptcy court found that the parties intended for Duckworth Development to buy Lindsey's entire interest in the parcels. The record supports this finding. Lundy and Bumgarner, two disinterested realtors, testified that when Lindsey approached them about selling the parcels—"quickly," in a "fire sale" to avoid foreclosure—there was no talk of Lindsey retaining a partial interest. Rather, Lindsey's intent was "to sell the entirety of" the property, with the $450,000 asking price representing the "entirety" of the interest in the parcels—including "Lindsey's interest individually." And the appraiser testified that his appraisal of the parcels' value was for their "entire interest" rather than a partial interest.

Hank Duckworth confirmed that Lindsey's $450,000 offer represented "the entire interest" of the parcels, and there was no discussion of Lindsey retaining any interest. Duckworth had refrained from working with business partners his entire career, he testified, and had no intention of forming a post-closing business relationship with Lindsey. After Lindsey discovered the error in the warranty deed, he told Duckworth that his attorneys "screwed up" and Duckworth could get his new

18

mortgage "paid for" if he "play[ed] [his] cards just right." And when this issue came to light, Lindsey's own attorney advised him to sign the corrective warranty deed.

This testimony, establishing Lindsey's intent to convey his entire interest to Duckworth Development, was corroborated by the documents related to the sale. In Lindsey's schedule of assets, he represented that he owned the parcels in fee simple. He listed their fair market value as $487,410, comparable to the $450,000 Duckworth Development paid to buy the parcels in this "fire sale." The sales contract listed the seller not as Kracor but as "Kracor South, Inc. et al," meaning that Kracor was not the only seller. See Et al., Black's Law Dictionary (11th ed. 2019) (defining "et al." as "[a]nd other persons"). The legal description of the parcels in the sales contract described the entire property and didn't mention a partial interest. The cover letter to the title commitment indicated that both Kracor and Lindsey were the sellers. The title commitment required both Kracor and Lindsey to execute the warranty deed. And the title affidavit that Lindsey signed swore that Kracor was "the" record owner of the property and there were no other parties in possession of it. Finally, when Lindsey moved the bankruptcy court for leave to sell the parcels, he represented that his intent was to sell "his" property pursuant to the terms "between [him]" and Duckworth Development.

We recognize that the issue of the parties' true intent was disputed at trial. Lindsey testified that he still owned an interest in the parcels and had only intended

to sell Kracor's interest.  But it was the bankruptcy court's task to weigh the evidence and resolve this conflict.  Under our deferential standard of review, we can't say that the bankruptcy court's factual and credibility findings on the parties' intent were clearly erroneous.  See Anderson v. City of Bessemer City, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.").

## Mutual Mistake

The bankruptcy court found that the parties made a mutual mistake because the warranty deed omitted Lindsey in his individual capacity, contrary to the parties' intent for Lindsey to sell his entire interest in the parcels to Duckworth Development.  Again, there was record evidence to support this factual finding.

The commercial realtor and Duckworth Development's attorney testified they both believed that the contract's reference to "Kracor South, Inc. et al" as the seller included Kracor and Lindsey.  The attorney explained that Lindsey's omission in his personal capacity from the warranty deed was caused by human error.  His firm used a computer program to create the closing documents, which required the user to input the names of the parties to the sale and the program would then generate the closing documents.  A legal assistant inputted only Kracor's name because that was the name on the sales contract.  Because of this "simple input error," every closing document generated by the program "list[ed] only one party"—Kracor—as the seller.  Other

20

documents related to the sale which weren't generated by the program and were unaffected by the error, like the April 24, 2017 letter to Lindsey, provided that Kracor and Lindsey were the sellers.

These facts support the bankruptcy court's finding that the "parties agree[d] to one thing and then, due to . . . inadvertence, express[ed] something different" in the warranty deed.  See Providence Square, 507 So. 2d at 1372.  The bankruptcy court therefore had a sufficient evidentiary basis to reform the warranty deed to "accurately express the true intention or agreement of the parties."  See Tobin, 948 So. 2d at 696.  Because the bankruptcy court didn't clearly err in its findings on the parties' intent and the mutual mistake in the warranty deed, we affirm its judgment reforming the warranty deed to conform with the agreement.

### Gross Negligence

Lindsey finally argues that the bankruptcy court erred in finding that the mistake in the warranty deed was the result of simple rather than gross negligence.[2] Because Duckworth Development's attorneys were grossly negligent, Lindsey argues, it wasn't entitled to reformation.

---

[2] Lindsey also states in his brief that Duckworth acted with "unclean hands," but doesn't provide any argument or authority in support of this claim.  Because Lindsey raised this claim in a perfunctory manner, he has waived it.  See, e.g., Sapuppo v. Allstate Floridian Ins. Co., 739 F.3d 678, 681 (11th Cir. 2014) ("We have long held that an appellant abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority.").

21

Under Florida law, "a plaintiff's <u>gross</u> negligence . . . will prevent him from obtaining reformation from a court of equity." <u>Goodall v. Whispering Woods Ctr., LLC</u>, 990 So. 2d 695, 701 (Fla. 4th DCA 2008); <u>Cont'l Cas. Co. v. City of Ocala</u>, 149 So. 381, 386 (Fla. 1933) ("[T]here is a serious question whether such amended bill shows affirmatively that the complainant was guilty of such gross negligence as precluded it from invoking the aid of a court of equity to reform the bond."). Gross negligence is "an act or omission that a reasonable, prudent person would know is likely to result in injury to another." <u>Eller v. Shova</u>, 630 So. 2d 537, 541 n.3 (Fla. 1993). Simple negligence is merely "the failure to use reasonable care." <u>State v. Winters</u>, 346 So. 2d 991, 993 (Fla. 1977). Whether a party seeking "reformation is guilty of gross negligence is one of fact to be determined in the light of the circumstances . . . ." <u>Goodall</u>, 990 So. 2d at 701.

The bankruptcy court found that the mistake in omitting Lindsey from the warranty deed was only a negligent mistake and not gross negligence, and there was record evidence to support this finding. As described above, the mistake in the warranty deed was caused by a "human error." The closing documents listed only Kracor as the seller, Duckworth Development's attorney explained, because a legal assistant failed to type Lindsey's name into a computer program. The attorney testified that this "input error" was a mistake which wasn't caught before closing. The attorney testified that his firm was diligent in not making mistakes but "the

22

reality is that errors happen, and 99 times out of 100 the party on the other side acknowledges the error and signs the corrective deed." When the error here came to light, Duckworth's attorneys immediately tried to correct it by having Lindsey sign a corrective warranty deed, which Lindsey refused to do in disregard of his own attorney's advice.

Given the explanation for how the mistake occurred and the swift steps taken to rectify it, we can't say that the bankruptcy court clearly erred in finding that Duckworth Development and its attorneys were only simply negligent. See Anderson, 470 U.S. at 574. Thus, we affirm the bankruptcy court's factual finding that Duckworth Development didn't act with gross negligence.

**AFFIRMED**.