In re: ENECO, INC., Debtor.
MAXIMILLIAN & CO., Chapter 7 Appellant,
v.
CATALYST INVESTMENT GROUP LIMITED, Appellee.
BAP No. UT-09-013, Bankr. No. 08-20319.
United States Bankruptcy Appellate Panel, Tenth Circuit.
March 2, 2010.
Before MICHAEL, BROWN, and ROMERO, Bankruptcy Judges.

OPINION[*]
MICHAEL, Bankruptcy Judge
According to one advertising slogan, "a diamond is forever."[1] The jurisdiction of a bankruptcy court is not. The question we must answer is whether the bankruptcy court erred when it determined that it did not have jurisdiction over a dispute between two creditors relating to assets no longer property of a bankruptcy estate. Finding no error, we affirm.

I. BACKGROUND FACTS
Eneco, Inc. ("Eneco") is a Utah corporation that developed various energy technologies. Eneco applied for and received numerous domestic and foreign patents with respect to these technologies ("Patents"). The Patents were Eneco's primary assets. Maximillian & Co. ("Maximillian") is an investor that loaned money to Eneco in 2005 and 2006, in exchange for convertible promissory notes ("Notes").[2] Like other investors, Maximillian's Notes from Eneco were secured by certain rights in the Patents.[3] Maximillian and other holders of Eneco Notes ("Noteholders") entered into an Intercreditor Agreement, appointing a Collateral Agent to hold the Patents and act on their behalf ("Agreement").[4] Maximillian eventually became successor Collateral Agent under the Agreement.[5] Eneco is not a party to the Agreement, but granted a security interest in the Patents to the Collateral Agent for the benefit of the Noteholders under a separate security agreement.[6]
Catalyst Investment Group Limited ("Catalyst") is a market capital fund raiser retained by Eneco in 2006 to secure equity and debt financing through the sale of stock and bonds in foreign markets. Catalyst alleges it is owed more than $1,000,000 for "fund raising and advisory services provided" to Eneco. Further, Catalyst alleges it was assigned certain rights and interests by various 2005 Noteholders who were parties to the Agreement, including a secured interest in the Patents.[7] Both Maximillian and Catalyst are business entities organized under the laws of the United Kingdom. Additionally, Max Lewinsohn ("Lewinsohn"), the sole proprietor of Maximillian, is a citizen of the United Kingdom and a former member of Eneco's board of directors.[8]
Eneco filed its Chapter 11 bankruptcy petition on January 18, 2008. As debtor-in-possession, Eneco filed an adversary proceeding seeking a judicial declaration that it had no liability to any 2005 Noteholders, including Maximillian. Gil A. Miller was appointed trustee ("Trustee") on March 19, 2008, and was thereafter substituted as the plaintiff in Eneco's adversary proceeding. On Trustee's motion, the bankruptcy case was converted to one under Chapter 7 on June 3, 2008.
On September 11, 2008, Trustee and Maximillian, in its individual capacity and as Collateral Agent, entered into an Agreement for Settlement of Disputes and Purchase of Assets ("Settlement").[9] Pursuant to the Settlement, the parties agreed Eneco's adversary proceeding against Maximillian and other 2005 Noteholders would be dismissed with prejudice, conditioned upon purchase of the Patents and other assets by Maximillian for cash and forgiveness of certain claims against Eneco.[10] On September 18, 2008, Trustee filed his motion to approve Settlement, to set bid procedures, and to authorize the sale of the Patents and other assets to Maximillian ("Motion to Approve").[11] Trustee sought to sell the Patents "free and clear of liens, claims, encumbrances, and interests" pursuant to 11 U.S.C. § 363(f).[12] The proposed sale was subject to overbids in conjunction with auction procedures to be approved by the bankruptcy court, and permitted the Collateral Agent to credit bid pursuant to § 363(k).[13]
Catalyst objected to Trustee's Motion to Approve, arguing that as assignee of 2005 Noteholders, it had a lien on the Patents and should be permitted to credit bid at auction, or alternatively, Catalyst's lien should attach to the Patents following any sale.[14] Additionally, according to Catalyst, because the proposed sale of the Patents was to Maximillian in its individual capacity, and not as Collateral Agent, Maximillian was breaching its fiduciary duties to other Noteholders under the Agreement.[15] Catalyst also filed a motion for adequate protection.[16]
On October 21, 2008, the bankruptcy court held an evidentiary hearing on Trustee's Motion to Approve. The bankruptcy court overruled Catalyst's objections, finding the Collateral Agent had the authority to enforce, collect, and bind the 2005 Noteholders. The bankruptcy court entered a written order approving the Settlement and setting bid and sales procedures on October 24, 2008.[17] The order stated that if the sale of the assets to Maximillian is approved by the court, then Maximillian shall acquire them for the benefit of the Collateral Agent and other entities who have contributed to the purchase price.[18] Further, the order reserved to Catalyst a right to object to the sale at the sale hearing based on lack of adequate protection.[19]
No competing bids for the Patents were submitted, but as anticipated, on November 4, 2008, Catalyst filed an objection to Trustee's motion to authorize the sale of those assets to Maximillian.[20] At the conclusion of the sale hearing held on November 6, 2008, the bankruptcy court, satisfied that Catalyst's rights to bring certain claims respecting the Patents against Maximillian were protected by the addition of special provisions to the proposed sale order, granted Trustee's motion to authorize sale.[21] On November 7, 2008, the bankruptcy court entered a written order authorizing and approving the sale of the Patents to Maximillian ("Sale Order").[22] The Sale Order was effective and enforceable immediately upon entry, and Trustee issued a bill of sale to Maximillian later the same day.[23] The Sale Order was not appealed.[24]
Three other critical events occurred the day the bankruptcy court entered its Sale Order. First, Maximillian agreed to sell the Patents to MicroPower Global, Ltd. ("MicroPower") in exchange for equity interests in MicroPower, a British Virgin Islands company.[25] Lewinsohn, Maximillian's principal, is a major shareholder of MicroPower and is also chairman of its board of directors. All of Maximillian's rights in the Patents were in fact subsequently assigned to MicroPower by quit-claim transfer on December 4, 2008.[26]
Second, Catalyst filed a claim form against Maximillian and Lewinsohn in an English court seeking judicial declaration that it was a rightful holder of Eneco's 2005 Notes and was owed certain assets, interests, and benefits by Maximillian ("UK Action").[27] Additionally, Catalyst alleged Maximillian breached certain contractual, trust, and fiduciary duties to Catalyst and other Eneco Noteholders by purchasing the Patents on its own behalf rather than as Collateral Agent under the Agreement. As a result, Catalyst sought compensation in equity, damages, and restitution.[28]
And third, Maximillian filed an action in Utah state court, seeking a declaratory judgment that Catalyst was not the rightful owner of Eneco Notes secured by the Patents ("Utah Action").[29] Further, Maximillian asked for a monetary judgment against Catalyst's assignors for amounts Maximillian claims it was owed as Collateral Agent as damages resulting from a breach of the Agreement. The Utah Action filed by Maximillian was similar in several respects to the UK Action filed by Catalyst.
Upon learning of Maximillian's transfer of the Patents to MicroPower, Catalyst filed an ex parte application for injunction with the English court, and also sought to join MicroPower as a defendant in the UK Action.[30] On December 29, 2008, the English court issued a limited interim injunction requiring twenty-one days notice of intent to dispose of the Patents, and also added MicroPower as a defendant in the action.[31] Maximillian did not challenge the English court's interim injunction.[32]
On February 12, 2009, Maximillian filed its motion for contempt order against Catalyst in the bankruptcy court, seeking sanctions for an alleged willful and malicious violation of the Sale Order ("Contempt Motion").[33] Maximillian also asked the bankruptcy court to order Catalyst to cease and desist from asserting a "proprietary interest" in the Patents.[34] In addition to incurring costs to defend the UK Action, Maximillian claimed its equity interest in MicroPower was being threatened. The alleged harm stemmed from MicroPower's difficulties in raising funds to finance the commercial development of the Patents as a result of Catalyst's assertion of competing claims and interests.[35]
Catalyst responded, asserting the Contempt Motion should be dismissed for a number of reasons.[36] First, Catalyst contended the Sale Order specifically preserved Catalyst's rights to pursue claims against Maximillian for breach of contractual and fiduciary duties as the Collateral Agent under the Agreement.[37] Second, Catalyst argued the bankruptcy court lacked subject matter jurisdiction over the dispute between these two non-debtor entities with respect to property no longer belonging to the bankruptcy estate.[38] Third, Catalyst maintained MicroPower, as owner of the Patents, was the real party in interest, and therefore Maximillian lacked standing to file the Contempt Motion.[39] And finally, Catalyst claimed Maximillian was judicially estopped from asserting the UK Action violated the Sale Order because Maximillian took an inconsistent position in the Utah Action it filed against Catalyst the same day Catalyst filed the UK Action.[40]
On March 6, 2009, the bankruptcy court held a hearing on the Contempt Motion. At the conclusion of the hearing, the bankruptcy court made findings of fact and conclusions of law on the record, finding this dispute was between non-debtor parties and related to property no longer belonging to the bankruptcy estate. Further, the bankruptcy court found the dispute did not arise out of the Sale Order, and had little, if any, impact on the estate or Trustee.[41] Therefore, the bankruptcy court denied the Contempt Motion on the basis it lacked subject matter jurisdiction over the dispute.[42] On April 10, 2009, the bankruptcy court entered a written order denying the Contempt Motion.[43] Maximillian timely appealed the bankruptcy court's order to this Court.[44]

II. APPELLATE JURISDICTION
This Court has jurisdiction to hear timely-filed appeals from "final judgments, orders, and decrees" of bankruptcy courts within the Tenth Circuit, unless one of the parties elects to have the district court hear the appeal.[45] Neither party elected to have this appeal heard by the United States District Court for the District of Utah. The parties have therefore consented to appellate review by this Court.
A decision is considered final "if it `ends the litigation on the merits and leaves nothing for the court to do but execute the judgment.'"[46] A motions panel of this Court previously determined the bankruptcy court's order denying Maximillian's Contempt Motion is a final order for purposes of review because nothing remains to be litigated.[47]

III. STANDARD OF REVIEW
Whether a bankruptcy court has subject matter jurisdiction is a legal question reviewed de novo.[48]De novo review requires an independent determination of the issues, giving no special weight to the bankruptcy court's decision.[49]

IV. ANALYSIS
On appeal, Maximillian argues the bankruptcy court had subject matter jurisdiction over this dispute because: 1) the Contempt Motion arises in a case under title 11 pursuant to 28 U.S.C. § 157(b)(2)(N); 2) the Contempt Motion is related to a case under title 11 pursuant to 28 U.S.C. § 157(c)(1); 3) the bankruptcy court had jurisdiction to enforce the provisions of its Sale Order; and 4) Congressional intent regarding jurisdiction is "to allow [bankruptcy courts] to deal efficiently and expeditiously with all matters connected with the bankruptcy estate."[50] Catalyst responds with the same arguments it made to the bankruptcy court for dismissal of the Contempt Motion: 1) the Sale Order specifically preserved Catalyst's rights to pursue claims against Maximillian for breach of contractual and fiduciary duties as the Collateral Agent under the Agreement; 2) the bankruptcy court lacks jurisdiction over a dispute between two non-debtor entities with respect to property no longer belonging to the bankruptcy estate; 3) Maximillian lacked standing to file the Contempt Motion because MicroPower, as owner of the Patents, was the real party in interest; and 4) Maximillian was judicially estopped from asserting the UK Action violated the Sale Order. Having considered the parties' arguments, we conclude that in order to resolve this appeal we must answer two questions. One, does the dispute between Catalyst and Maximillian arise out of the bankruptcy court's Sale Order? And two, if not, is there any other basis to support the bankruptcy court's exercise of jurisdiction over the dispute? We answer both questions in the negative. Therefore, based on the following, we affirm the bankruptcy court's order denying the Contempt Motion.

A. The Bankruptcy Court Correctly Determined the Dispute Does Not Arise Out of the Sale Order
Maximillian asserts the bankruptcy court had jurisdiction because it purchased the Patents free and clear of the rights, claims, and interests of all other entities, and therefore, Catalyst's filing and prosecution of the UK Action was a knowing, willful, and malicious violation of the bankruptcy court's Sale Order.[51] The "free and clear" language is contained in paragraph 9 of the Sale Order and provides:
Pursuant to Bankruptcy Code §§ 105(a), 363(b) and 363(f), the transfer of Assets to the Purchaser shall vest the Purchaser with all rights, title, and interest in and to the Assets effective as of the time of the transfers under this Order, and shall be free and clear of all liens, claims, rights, interest, and encumbrances, which have, or could have, been asserted by the Debtor or any of its creditors in connection with the Debtor's Bankruptcy Case.[52]
Based on this language, Maximillian argues the bankruptcy court had jurisdiction over the dispute:
The sale order was entered by the bankruptcy court, and Maximillian paid the Estate substantial consideration for the "free and clear" provisions in the sale order. There is no reason to require Maximillian to litigate the enforcement of the sale order in some other forum. The bankruptcy court entered the order, and it can enforce its own order.[53]
In other words, Maximillian contends the Contempt Motion was premised on a violation of the Sale Order, and the bankruptcy court has inherent power to enforce its own order.
Maximillian also argues Paragraph 16 of the Sale Order reserves jurisdiction to the bankruptcy court to adjudicate related disputes, and that the bankruptcy court is empowered to enter civil contempt orders pursuant to § 105(a). Paragraph 16 provides:
This Bankruptcy Court retains jurisdiction so long as the Debtor's Bankruptcy Case is pending to (i) enforce and implement the terms and provisions of the Sale and this Order (including the breach of the Sale), all amendments thereto, any waivers and consents thereunder, and of each of the agreements executed in connection therewith in all respects and (ii) determine as a core proceeding (by motion and without necessity for an adversary proceeding if the Court deems appropriate) any proceeding, dispute, or controversy arising out of or related to this Order and the Sale.[54]
If paragraphs 9 and 16 were the only relevant provisions of the Sale Order, Maximillian might have a tenable argument. However, the critical question is whether Catalyst's actions were in fact a violation of the Sale Order, or more generally, whether the dispute between these two creditors arises out of the Sale Order. Answering that question demands examination of the entire Sale Order, as well as the specific nature of the claims filed by Catalyst in the UK Action.
In its initial brief on appeal, as was also the case in its Contempt Motion and memorandum in support thereof, Maximillian neglects to address the import of paragraph 24 of the Sale Order. Paragraph 24 provides:
Nothing in this Order shall be deemed or construed to affect, impair or diminish any claims, defenses or causes of action between or among the past, present or future parties to that certain Intercreditor Agreement dated March 18, 2005, that arise out of, arise from or relate to such Intercreditor Agreement, and nothing in this Order shall be deemed or construed to confer jurisdiction upon this Court with respect to any such claims or defenses, provided, however, that any and all claims of such parties against the Debtor, the Debtor's estate or the Debtor's property shall be, and hereby are, forever waived and released, and this Court shall have continuing jurisdiction to determine and resolve any disputes regarding any such excluded claims that subsequently may be asserted against the Debtor, the Debtor's estate or the Debtor's property.[55]
The bankruptcy court specifically relied upon paragraph 24 in determining that the dispute between Maximillian and Catalyst, as characterized in the UK Action, did not arise out of the Sale Order. Our inquiry, therefore, must focus on whether Catalyst's claims in the UK Action are within the scope of claims reserved in paragraph 24.
In its objection to Trustee's motion to authorize sale, Catalyst argued:
[A]ny [sale] order must carve out and broadly preserve any and all claims, causes of action and rights Catalyst has or may have against Lewinsohn. Specifically, any findings of good faith and good title must not be allowed to apply to the Collateral Agent's conduct viz-a-viz Catalyst and the other 2005 Noteholders at any timewhether pre-closing or post-closing. The proposed order must be revised to preserve Catalyst and the other 2005 Noteholders [sic] rights and claims against Lewinsohn individually and in his capacity as the Collateral Agent. There can be no dispute on this point since the Trustee has already reassured this court and Catalyst that Catalyst's rights would be preserved as part of his argument to convince the court to enter into the Bidding Procedures Order.[56]
In response to Catalyst's objection, the Trustee stated:
The crux of Catalyst's objection to the settlement and the sale relates to disputes between Catalyst, who claims to own 37.14% of the 2005 notes issued by Eneco, Inc. (the "Debtor") and Maximillian & Co. (the "Collateral Agent") as collateral agent for the 2005 noteholders. While the various disputes between Catalyst and the Collateral Agent are interesting, they are fundamentally irrelevant to whether the proposed settlement and sale should be approved. Whether Catalyst is the holder of 37.14% of the 2005 notes, or whether instead Catalyst did not receive a proper assignment of those notes, is irrelevant to whether the settlement and sale should be approved. Whether the Collateral Agent has breached his fiduciary duties to Catalyst or other 2005 noteholders is irrelevant to whether the settlement and sale should be approved.
These disputes are best left to another court and another day.[57] As a result of Catalyst's objection, paragraph 24 was drafted and inserted into the proposed sale order by Maximillian and Trustee just prior to the sale hearing.[58]
At the sale hearing, Maximillian's counsel represented to the bankruptcy court:
We've attempted to address the issue raised by Catalyst in its pleading in these two modifications to the order to which our client consents, and [paragraph 24] specifically addresses the question about the rights inter se among the note holders and the collateral agent under the intercreditor agreement, recognizes, however, that nothing in the order gives this court jurisdiction with respect to those disputes but also recognizes the fact that although the debtor is not per se a party to the intercreditor agreement, it did acknowledge the intercreditor agreement and part of the deal is to have the claims against the debtor that arise out of the notes released and waived.[59]
Maximillian's counsel further stated at that hearing:
The other point I want to make is with respect to the rights inter se among the note holders and the collateral agent. We're also respectful of that. We're not trying to railroad or steam roll Catalyst as a note holder. We are not saying, "If this order is approved, you have no more rights." We made a provision in paragraph [24] to specifically recognize that nothing in this order takes away the right of Catalyst to sue the collateral agent. Nothing in this order takes away the right of the collateral agent to defend. Those rights which arise out of a nonbankruptcy order, nonbankruptcy agreement, are being preserved. So again they actually have two forums where they could possibly seek redress. One, if there's a violation of this order, they could come back to you. Two, if they think there's a violation of the intercreditor agreement, breach of fiduciary duty, you know, reckless disregard, they can sue in an appropriate forum. So their rights are adequately protected. And for that reason we would ask, Your Honor, to approve this deal with the ten-day waiver because both of them are consistent with the best interests of this estate.[60]
Clearly, additional litigation between Catalyst and Maximillian was contemplated and anticipated, and the reservation of certain claims was bargained for and negotiated in the course of obtaining the Sale Order from the bankruptcy court. However, in its reply brief, Maximillian asserts Catalyst's claims in the UK Action do not fall within the parameters of the reservation articulated in paragraph 24 of the Sale Order. Maximillian argues paragraph 24 preserved certain in personam claims against Maximillian while extinguishing all in rem claims as to the Patents, and that Catalyst makes in rem claims in the UK Action.[61]
In its amended particulars of claim filed in the UK Action, Catalyst requested the following:
(1) A Declaration that the Claimant is the rightful holder of the Claimant's Notes.
(2) A Declaration that Maximillian & Co. has acquired the [Patents] as trustee for the Claimant (among others) in proportion to its entitlement under and by virtue of the Claimant's Notes and a Declaration as to the proportion (being at least 25%) of the Claimant's beneficial interest in the [Patents].
(3) An Inquiry as to what has become of the [Patents].
(3A) A Declaration that any [Patents] held by [MicroPower] are held by [MicroPower] on trust for the Claimant in proportion to its entitlement under and by virtue of the Claimant's Notes.
(4) An account of the fees and expenses for which the Claimant is properly liable to Maximillian & Co.
(5) An Order that Maximillian & Co. and [MicroPower] account to the Claimant as constructive trustee in respect of any and all profits and benefits made from the [Patents] and, in the case of Maximillian, from its role as Collateral Agent.
(6) Further or alternatively, equitable compensation and/or damages for breach of contract and fiduciary duty.
(7) An Order that Maximillian & Co. and [MicroPower] pay interest on the sums for which they are ordered to account, alternatively on any sum awarded by way of damages or equitable compensation, pursuant to the equitable jurisdiction of the Court and/or by way of restitution or damages at such rate and for such period and compounded at such intervals as the Court shall think fit.
(8) All necessary accounts, directions, inquiries or orders related or consequential to the relief sought above.
(9) Further or other relief.
(10) Costs.[62]
We do not interpret any of the above to be an in rem claim, or a claim for a "proprietary interest," which historically has meant an ownership interest entitling one to possession, control, or use of property.[63] In fact, Catalyst claims only beneficial interests arising out of the Agreement, seeking declarations and accountings regarding profits from the Patents, and damages for alleged breach of contract and fiduciary duties.
To restate, paragraph 24 provides in pertinent part:
Nothing in this Order shall be deemed or construed to affect, impair or diminish any claims, defenses or causes of action between or among the past, present or future parties to that certain Intercreditor Agreement dated March 18, 2005, that arise out of, arise from or relate to such Intercreditor Agreement, and nothing in this Order shall be deemed or construed to confer jurisdiction upon this Court with respect to any such claims or defenses[.][64]
Catalyst's claims fit squarely within the broadly articulated confines of paragraph 24 of the Sale Order that, we repeat, was drafted by Maximillian. As a result, the bankruptcy court correctly concluded that the dispute between Maximillian and Catalyst was not one arising out of the Sale Order, Catalyst's claims in the UK Action having been intentionally carved out and preserved by paragraph 24. The bankruptcy court did not err in refusing to exercise jurisdiction over the Contempt Motion on the basis of its authority to enforce the Sale Order.

B. The Bankruptcy Court Correctly Ruled It Lacked Subject Matter Jurisdiction Over the Dispute Raised by the Contempt Motion
In addition to finding the dispute did not arise out of the Sale Order, the bankruptcy court recognized the Contempt Motion for what it is: a dispute between two non-debtor parties, over a pre-petition state law contract to which the debtor was not a party, about whether or not the agent breached its duty to the principal. Thus, the bankruptcy court correctly ruled it did not have subject matter jurisdiction over the Contempt Motion because it did not "arise in" the bankruptcy case, nor was it sufficiently "related to" the bankruptcy proceeding.
Generally speaking, bankruptcy courts "may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11," also known as "core proceedings,"[65] and any "proceeding that is not a core proceeding but that is otherwise related to a case under title 11," also known as "non-core proceedings."[66] In our circuit, "[c]ore proceedings are proceedings which have no existence outside of bankruptcy. Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings."[67] The dispute between these creditors over the Patents arises out of the Agreement and is clearly not a core proceeding. Any sale of the Patents outside of bankruptcy would have given rise to the same issues which could be adjudicated in another court. In fact, Maximillian acknowledged this by filing a suit for declaratory judgment regarding ownership of Eneco Notes in Utah federal district court the same day the bankruptcy court entered its Sale Order.
"A proceeding is `related to' a bankruptcy case if it could have been commenced in federal or state court independently of the bankruptcy case, but the `outcome of that proceeding could conceivably have an effect on the estate being administered in bankruptcy.'"[68] "Related proceedings `include (1) causes of action owned by the debtor which become property of the estate pursuant to 11 U.S.C. § 541, and (2) suits between third parties which have an effect on the bankruptcy estate.'"[69] In making its ruling, the bankruptcy court relied upon the Eleventh Circuit case of In re Lemco[70] and the Tenth Circuit case of In re Gardner,[71] stating:
The Court is persuaded by the reasoning in the Lemco and the Gardner cases that this Court lacks subject matter jurisdiction for further involvement and interpreting the motion for contempt that has been filed by Catalyst.[72]
In both cases, the courts of appeals were presented with undisputed facts and applied "related to" jurisdictional analysis, concluding there was no subject matter jurisdiction on that basis.
In Gardner, the IRS appealed a bankruptcy court's decision holding its tax lien on debtor's property was extinguished when the property was awarded to debtor's ex-spouse in a state court divorce proceeding, and that the ex-spouse's interests in the property were superior to those of the IRS.[73] The district court affirmed, and further appeal was taken. Adopting the formulation of "related to" jurisdiction espoused by the United States Court of Appeals for the Third Circuit ("Third Circuit") in Pacor, Inc. v. Higgins,[74] the United States Court of Appeals for the Tenth Circuit ("Tenth Circuit") explained "related to" jurisdiction as follows:
Related proceedings are civil proceedings that, in the absence of a bankruptcy petition, could have been brought in a district court or state court. The test for determining whether a civil proceeding is related in bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy. Although the proceeding need not be against the debtor or his property, the proceeding is related to the bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action in any way, thereby impacting on the handling and administration of the bankruptcy estate.
A bankruptcy court has jurisdiction over disputes regarding alleged property of the bankruptcy estate at the outset of the case. When property leaves the bankruptcy estate, however, the bankruptcy court's jurisdiction typically lapses, and the property's relationship to the bankruptcy proceeding comes to an end. Thus, the bankruptcy court lacks related jurisdiction to resolve controversies between third party creditors which do not involve the debtor or his property unless the court cannot complete administrative duties without resolving the controversy.[75]
The Tenth Circuit characterized the Gardner facts as a conflict between two creditors over property no longer a part of the bankruptcy estate, the resolution of which would not affect the bankruptcy estate or the debtor.[76] Accordingly, with respect to that part of the decision determining that the ex-spouse's interests were superior to those of the IRS, the Tenth Circuit reversed and remanded for dismissal for lack of jurisdiction.[77] Further, the Tenth Circuit stated, "[t]o hold otherwise would lead to almost unlimited jurisdiction by the bankruptcy court."[78]
Lemco involved a factual situation more similar to that on appeal here than Gardner. In that case, a Chapter 7 trustee obtained an order permitting the sale of the debtor's assets located on leased property and providing that the assets shall be removed from the site within sixty days following sale.[79] The debtor's assets were sold by the trustee, and the sale was confirmed by an order of the bankruptcy court that did not make reference to the sixty day removal requirement contained in the previous order. Thereafter, debtor's landlord filed a motion seeking damages for the loss of use of its real property, alleging the purchaser had failed to timely remove debtor's assets. Subsequently, the landlord also brought a motion for contempt against the purchaser for noncompliance with the sixty-day removal requirement.[80]
The bankruptcy court held the purchaser in civil contempt and awarded damages in favor of debtor's landlord. On appeal, the district court classified the bankruptcy court's action "as an exercise of its continuing power to enforce its orders," and affirmed the civil contempt sanctions against purchaser.[81] On further appeal, the United States Court of Appeals for the Eleventh Circuit ("Eleventh Circuit"), also adopting the Third Circuit's Pacor formulation of "related to" jurisdiction, opined:
We agree that courts should retain jurisdiction to enforce their orders, but this does not help [landlord]. The fact remains that the sale of the debtor's equipment became final on December 3, 1987, and at that time the property left its estate. When property is sold by the trustee with the approval of the court, the buyer acquires title clear of all claims in bankruptcy. Such property may not be hauled back into the estate, and the terms are inviolate in the absence of fraud or collusion. [Landlord] does not contend that [purchaser] acted fraudulently in the course of the sale proceedings. [Landlord] failed to object to the conditions contained in the final order of sale. In order to protect the interests of good faith purchasers and the integrity of the bankruptcy system, the sale must be considered final.
The fact that property was once owned by a bankrupt does not supply federal jurisdiction of all future disputes concerning the property. The broad jurisdictional provisions set forth in § 1334 grant the district courts power to supervise the entire restructuring of the debtor's estate. However, once property is sold, further disputes have nothing to do with the debtor's estate. The dispute here is between debtor's landlord and [purchaser]; there is no suggestion that the proceeds, if recovered, would be turned over to the trustee. The judgment of the bankruptcy court orders [purchaser] to pay damages directly to debtor's landlord, so we fail to see how recovery could conceivably have an effect on debtor's estate. This dispute does not involve the identification of the debtor's property interests and cannot affect other creditors. There is no reason for the bankruptcy court's jurisdiction to linger.[82]
The Eleventh Circuit stressed that the time for determining whether the conflict between landlord and purchaser could conceivably have affected administration of debtor's estate was when landlord filed it motion for damages alleging loss of use of its property.[83] Stating that "bankruptcy jurisdiction is designed to provide a single forum for dealing with all claims to the bankrupt's assets, but it cannot be extended beyond its purpose," the Eleventh Circuit reversed.[84] It held that "the dispute between [purchaser] and [landlord] is not `related to' the bankruptcy; its connections with the estate of [the debtor] are simply too tenuous for jurisdiction to lie under § 1334(b)."[85]
In this case, Maximillian argues Gardner and Lemco are not dispositive because neither case involved proceedings that would impact the administration of the bankruptcy estate. According to Maximillian:
Unlike Gardner, the outcome of the contempt motion in the present matter could conceivably have a dramatic impact on the bankruptcy estate. If the contempt motion is denied, Maximillian will assert an administrative claim against the estate that will definitely result in a diminution in the amount of money in the estate. In fact, even if the Trustee objects to the administrative claim, the estate will still be impacted as it pays attorneys fees and costs related to the objection.[86]
Catalyst responds that the mere threat of a claim against the bankruptcy estate does not confer bankruptcy jurisdiction.[87] We agree.
Catalyst filed the UK Action on November 7, 2008, and Maximillian filed the Contempt Motion giving rise to this appeal on February 12, 2009. The bankruptcy court was required to determine whether it had subject matter jurisdiction before addressing the merits of the Contempt Motion, and the appropriate time for assessing whether the dispute "could conceivably have affected administration of debtor's estate" was as of the date the Contempt Motion was filed.[88] At that time, no administrative claim had been filed by Maximillian.
Moreover, in response to the Contempt Motion, Catalyst specifically challenged the bankruptcy court's subject matter jurisdiction, citing Gardner and Lemco.[89] Even so, in its reply, Maximillian barely mentioned its "potential claim against the bankruptcy estate."[90] Further, at the hearing on the Contempt Motion, Maximillian focused almost solely on the argument that Catalyst's claims in the UK Action did not fall within the purview of Paragraph 24 of the Sale Order.[91] In fact, Maximillian did not file its administrative claim until September 1, 2009more than four months after the bankruptcy court refused to hear the Contempt Motion and Maximillian filed this appeal.[92] We refuse to permit Maximillian to retroactively manufacture jurisdiction on appeal.
As one bankruptcy court has opined:
There must exist some point at which "related to" jurisdiction does not exist even though it may impact upon creditors in some way. Requiring a party who may seek indemnification to file a proof of claim transforms a potential claim into a tangible claim by allowing a bankruptcy court to look beyond the "relatedness" allegations of the parties. Once the claim is filed, the bankruptcy court can contingently value that claim and at that time learn the true impact the third-party proceeding may have upon the allocation of assets among creditors, if any.[93]
Congress intended bankruptcy jurisdiction to be broad, but it is not limitless. A dispute between creditors, over a pre-petition state law contract to which the debtor was not a party, arising after the relevant assets have been sold by the bankruptcy estate, when any alleged impact on the estate is at best tenuous, does not fall within even the broadest interpretation of bankruptcy jurisdiction.

V. CONCLUSION
The bankruptcy court did not err in determining that the dispute between Maximillian and Catalyst did not arise out of the Sale Order and thus could not exercise jurisdiction over the Contempt Motion on the basis of "enforcing its own order." Additionally, the bankruptcy court correctly ruled that it did not otherwise have jurisdiction over the Contempt Motion because it was not related to the bankruptcy proceeding. The order of the bankruptcy court is therefore AFFIRMED.
NOTES
[*] This unpublished opinion is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. 10th Cir. BAP L.R. 8018-6(a).
[1] The slogan, first used by De Beers in 1947, was named the best advertising slogan of the 20th century by Advertising Age magazine.
[2] Eneco raised capital by issuing notes in 2003, 2005, and 2006 to various investors. The dispute between these two creditors centers on Catalyst's alleged rights in notes issued by Eneco in 2005.
[3] See Security Agreement dated March 18, 2005, in Appellant's App. at 149.
[4] Intercreditor Agreement dated March 18, 2005 ("Agreement"), in Appellant's App. at 137.
[5] Memorandum in Support of Catalyst's Objection to Trustee's Motion to Authorize Sale at 4, ¶ 8, in Appellant's App. at 340. Maximillian claims to have become the Collateral Agent in October 2007. Id.
[6] Security Agreement dated March 18, 2005, in Appellant's App. at 149.
[7] Catalyst's Objection to Trustee's Motion to Approve at 4, ¶ 8, in Appellant's App. at 94. Specifically, Catalyst claims to have purchased approximately 37% of the 2005 Notes issued by Eneco and values them at $1,951,959. Id.
[8] Catalyst claims Lewinsohn was Maximillian's alter-ego and in some instances refers to Maximillian as Lewinsohn. See Appellee's Corrected Br. at 11.
[9] Agreement for Settlement of Disputes and Purchase of Assets ("Settlement"), in Appellant's App. at 1. Other parties to the Settlement were 2003 Noteholders Ciralus Fine Arts Corp. and Shannon Industries Limited. Id.
[10] Settlement at 4-5, in Appellant's App. at 4-5.
[11] Trustee's Motion to Approve, in Appellant's App. at 70.
[12] Unless otherwise indicated, all future statutory references in text are to the Bankruptcy Code, Title 11 of the United States Code.
[13] Trustee's Motion to Approve at 15-17, in Appellant's App. at 84-86.
[14] Catalyst's Objection to Trustee's Motion to Approve, in Appellant's App. at 91.
[15] Id. at 6-7, ¶ 19, in Appellant's App. at 96-97.
[16] Catalyst's Motion for Adequate Protection, in Appellant's App. at 88.
[17] Order Authorizing and Approving Settlement and Procedures for Sale, in Appellant's App. at 636. The Settlement approved by the bankruptcy court was the Settlement dated September 11, 2008, as amended by the First Amendment to Agreement for Settlement of Disputes and Purchase of Assets, dated October 9, 2008, in Appellant's App. at 62.
[18] Order Authorizing and Approving Settlement and Procedures for Sale at 7, ¶ xxv, in Appellant's App. at 642.
[19] Id. at 7-8, ¶ xxvi, in Appellant's App. at 642-43.
[20] Catalyst's Objection to Trustee's Motion to Authorize Sale, in Appellant's App. at 335.
[21] See Transcript of Proceedings Held on November 6, 2008 at 16-18, in Appellant's App. at 373-75.
[22] Sale Order, in Appellant's App. at 644. The bankruptcy court entered a separate document containing the findings of fact and conclusions of law regarding Trustee's motion to authorize. See Findings of Fact and Conclusions of Law in Connection with Trustee's Motion to Authorize the Sale of Debtor's Assets, in Appellant's App. at 329.
[23] Sale Order at 6, in Appellant's App. at 649.
[24] Additional details regarding the Sale Order and relevant evidence heard by the bankruptcy court prior to entering the order will be developed in the Analysis section below.
[25] Agreement for the Purchase of Assets dated November 7, 2008, in Appellee's App. at 845.
[26] Quitclaim Assignment, in Appellee's App. at 645.
[27] Claim Form No. HC08C03158, in Appellant's App. at 208 (submitted in Errata to Appellant's Appendix, Docket No. 64000).
[28] Id. at 3, in Appellant's App. at 210 (submitted in Errata to Appellant's Appendix, Docket No. 64000). More details regarding Catalyst's claims in the UK Action will be discussed in the Analysis section below.
[29] First Amended Complaint, in Appellee's App. at 651.
[30] Without Notice Application, in Appellant's App. at 212 (submitted in Errata to Appellant's Appendix, Docket No. 64000).
[31] Interim Injunction, in Appellant's App. at 301.
[32] Although it did not directly challenge the injunction, on January 21, 2009, Maximillian filed a responsive pleading in the UK Action seeking an order "declaring that the English Court should not exercise any jurisdiction in these proceedings as the most appropriate forum is the Utah Court, USA." Application Notice, in Appellee's App. at 831.
[33] Motion for Contempt Order Against Catalyst, in Appellant's App. at 112.
[34] Id. at 23, in Appellant's App. at 134. Maximillian's characterization of Catalyst's claims in the UK Action as seeking recognition of a "proprietary interest" in the Patents is at the heart of this dispute.
[35] Id. at 18, in Appellant's App. at 129.
[36] Response and Objection to Motion for Contempt Order, in Appellant's App. at 476.
[37] Id. at 21-22, in Appellant's App. at 496-97.
[38] Id. at 30, in Appellant's App. at 505.
[39] Id. at 28, in Appellant's App. at 503.
[40] Id. at 36, in Appellant's App. at 511.
[41] Transcript of Hearing Held on March 6, 2009, in Appellant's App. at 546. The bankruptcy court's bench ruling begins on page 623.
[42] Id. at 82, in Appellant's App. at 627.
[43] Order Denying Motion for Contempt Order, in Appellant's App. at 631.
[44] Notice of Appeal in Appellant's App. at 633.
[45] 28 U.S.C. § 158(a)(1), (b)(1), and (c)(1); Fed. R. Bankr. P. 8002; 10th Cir. BAP L.R. 8001-1.
[46] Quackenbush v. Allstate Ins. Co., 517 U.S. 706, 712 (1996) (quoting Catlin v. United States, 324 U.S. 229, 233 (1945)).
[47] Order Allowing Appeal to Proceed and Setting Briefing Schedule, Docket No. 62922.
[48] In re S. Med. Arts Cos., Inc., 343 B.R. 250, 254 (10th Cir. BAP 2006).
[49] Salve Regina Coll. v. Russell, 499 U.S. 225, 238 (1991).
[50] Appellant's Br. at 24.
[51] Motion for Contempt Order at 22, ¶ 70, in Appellant's App. at 133.
[52] Sale Order at 3, ¶ 9, in Appellant's App. at 646.
[53] Appellant's Br. at 13-14.
[54] Sale Order at 4, ¶ 16, in Appellant's App. at 647.
[55] Sale Order at 6, ¶ 24, in Appellant's App. at 649.
[56] Catalyst's Objection to Trustee's Motion to Authorize Sale at 18, in Appellant's App. at 354.
[57] Reply Memorandum in Support of Trustee's Motion to Approve at 2, in Appellee's App. at 623.
[58] Transcript of Proceedings Held on November 6, 2008 at 8, ll. 4-24, in Appellant's App. at 365. At the sale hearing, counsel for Trustee represented to the bankruptcy court:

The first objection raised by Catalyst is that the court's order should not deprive Catalyst of its claims against the collateral agent for the 2005 note holders, and the trustee agrees completely with Catalyst's position and would submit that nothing in the order that was submitted to the court with its motion on September 18th precludes or purports to preclude Catalyst from asserting any claims it may have against the collateral agent.
In addition to that, the trustee has gone further and [Maximillian] has gone further, and . . . in the red lined order with respect to the IP sale, there is specific language that was inserted by [Maximillian] and by the trustee that reserves whatever rights Catalyst may have as against the collateral agent, and the order does nothing to eliminate those rights.
Id.
[59] Id. at 17, ll. 8-21, in Appellant's App. at 374.
[60] Id. at 88-89, ll. 6-25 and 1-4, in Appellant's App. at 445-46.
[61] Appellant's Reply Br. at 4-5, 7-8.
[62] Amended Particulars of Claim, in Appellant's App. at 324-25.
[63] There are several places in the record that indicate "proprietary interest" has a meaning under English law that differs from the meaning Maximillian ascribes to the term when characterizing Catalyst's claims in the UK Action. See, e.g., Transcript of Hearing Held on March 6, 2009, where counsel for Catalyst states:

In England, in fact, "proprietary" is the term of art used to enable a tracing. That is what that word means. And that is the only right in England that a tracing can be had pursuant to a claim of fiduciary duty by the use of the word "proprietary." Absent that, there is no remedy of a tracing available. That is why English counsel is required, not just chose, is required to place that word as the basis for its claim, your Honor. Id. at 77-78, ll. 20-25 and 1-4, in Appellant's App. at 622-23.
[64] Sale Order at 6, ¶ 24, in Appellant's App. at 649 (emphasis added).
[65] 28 U.S.C. § 157(b)(1). Section 157(b)(1) provides:

(b)(1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
[66] 28 U.S.C. § 157(c)(1). Section 157(c)(1)&(2) provide:

(c)(1) A bankruptcy judge may hear a proceeding that is not a core proceeding but that is otherwise related to a case under title 11. In such proceeding, the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected.
(2) Notwithstanding the provisions of paragraph (1) of this subsection, the district court, with the consent of all the parties to the proceeding, may refer a proceeding related to a case under title 11 to a bankruptcy judge to hear and determine and to enter appropriate orders and judgments, subject to review under section 158 of this title.
[67] Gardner v. United States (In re Gardner), 913 F.2d 1515, 1518 (10th Cir. 1990) (per curiam) (citation omitted).
[68] Personette v. Kennedy (In re Midgard Corp.), 204 B.R. 764, 771 (10th Cir BAP 1997) (quoting Gardner, 913 F.2d at 1518).
[69] Id. (quoting Celotex Corp. v. Edwards, 514 U.S. 300, 307 n.5 (1995)).
[70] Miller v. Kemira, Inc. (In re Lemco Gypsum, Inc.), 910 F.2d 784 (11th Cir. 1990).
[71] 913 F.2d 1515.
[72] Transcript of Hearing Held on March 6, 2009, at 82, ll. 3-7, in Appellant's App. at 627.
[73] In re Gardner, 913 F.2d at 1517.
[74] 743 F.2d 984, 994 (3rd Cir. 1984), overruled on other grounds by Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 134-35 (1995).
[75] In re Gardner, 913 F.2d at 1518 (citations and internal quotation marks omitted).
[76] Id. 1518-19.
[77] Id. at 1519.
[78] Id.
[79] In re Lemco, 910 F.2d at 785.
[80] Id. at 786.
[81] Id.
[82] Id. at 788-89 (internal citations and footnotes omitted).
[83] Id. at 788.
[84] Id. at 789-90. See also In re Xonics, Inc., 813 F.2d 127, 131 (7th Cir. 1987).
[85] Id. at 789.
[86] Appellant's Br. at 18.
[87] Appellee's Corrected Br. at 37.
[88] In re Lemco, 910 F.2d at 788.
[89] Response and Objection to Motion for Contempt Order at 30-34, in Appellant's App. at 505-509.
[90] Reply to Response and Objection to Motion for Contempt Order, in Appellant's App. at 515. Maximillian stated only that:

If the terms of the Sale Order are meaningless, and if Catalyst can disregard those terms with impunity by maintaining an ongoing proprietary interest in the Patents, Maximillian will not have received the benefit of its bargain and will have a substantial claim against the estate for failure of consideration and for resulting damages. Thus, the Debtor's estate and its administration are clearly impacted by Catalyst's contemptuous conduct.
Id. at 6, in Appellant's App. at 520.
[91] Transcript of Hearing Held on March 6, 2009, in Appellant's App. at 5976-20.
[92] See Catalyst's Motion for Continuance of Oral Argument, Docket No. 64018.
[93] Salem Mills, Inc. v. Wisc. Tool & Stamping Co. (In re Salem Mills, Inc.), 148 B.R. 505, 509 (Bankr. N.D. Ill. 1992). See also Buchanan v. Berman, Roberts & Kelly (In re Spaulding & Co.), 131 B.R. 84, 89 (N.D. Ill. 1990).